IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD GIBSON, | : |
| | : |
| Petitioner, | : |
| | : CIVIL ACTION |
| v. | : (capital habeas corpus) |
| | : |
| JOHN E. WETZEL, Secretary, | : No. 11-4550 |
| Pennsylvania Department of | : |
| Corrections; JEFF MARTIN, | : |
| Superintendent of the State | : |
| Correctional Institution at Greene; | : |
| and MARIROSA LAMAS, | : **ELECTRONICALLY FILED** |
| Superintendent of the State | : |
| Correctional Institution at Rockview, | : |
| | : |
| Respondents. | : |

**BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

> MATTHEW LAWRY
> MAURA MCNALLY
> Assistant Federal Defenders
> Federal Community Defender Office
> for the Eastern District of Pennsylvania
> 601 Walnut Street, Suite 545 West
> Philadelphia, PA 19106
> 215-928-0520
> Matthew_Lawry@fd.org
> Maura_McNally@fd.org

Dated:    November 3, 2022
              Philadelphia, Pennsylvania

## INTRODUCTION

Petitioner moves for summary judgment on Ground V as set forth in the *Memorandum of Law in Support of Petition* (ECF No. 120) (hereinafter "Mem."), which demonstrates that his convictions for first-degree murder were obtained through violations of due process as the result of unconstitutional jury instructions. These violations are apparent from the record developed in state court. Accordingly, Petitioner is entitled to summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Petitioner moves for summary judgment on Ground V because his entitlement to relief is plain and thus there is no need to engage in lengthy and complex litigation regarding the ten other grounds set forth in Mem. This motion will save the Court and parties considerable time and resources.

## STANDARDS GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The federal rules of civil procedure apply to federal habeas proceedings. *See* Fed. R. Civ. P. 81(a)(2); Rule 11, Rules Governing Habeas Corpus Cases Under Section 2254; *Hilton v.*

*Braunskill*, 481 U.S. 770, 775-76 & n.5 (1987) (federal rules of civil procedure typically apply to habeas proceedings); *Wilson v. Beard*, 426 F.3d 653, 662 (3d Cir. 2005) (same).

In particular, the summary judgment standards set forth in Rule 56 apply to habeas corpus proceedings. *Judge v. Beard*, 611 F. Supp. 2d 415, 419-20 (E.D. Pa. 2009); *see id.* at 433 (granting summary judgment on claim instructions violated *Mills v. Maryland*, 486 U.S. 367 (1988)); *see also Rompilla v. Beard*, 545 U.S. 375 (2005) (granting habeas relief in Pennsylvania capital case without holding evidentiary hearing); *Laird v. Horn*, 414 F.3d 419 (3d Cir. 2005) (same); *Bronshtein v. Horn*, 404 F.3d 700 (3d Cir. 2005) (same); *Jacobs v. Horn*, 395 F.3d 92 (3d Cir. 2005) (same); *Carpenter v. Vaughn*, 296 F.3d 138 (3d Cir. 2002) (same).

As set forth below, there are no genuine material issues of fact as to Ground V and Petitioner is entitled to relief on the record before this Court.

ARGUMENT

**A NEW TRIAL IS REQUIRED BECAUSE THE JURY INSTRUCTIONS LOWERED THE COMMONWEALTH'S BURDEN OF PROVING THE SPECIFIC INTENT ELEMENT OF FIRST-DEGREE MURDER.**[1]

**A.   The Due Process Violation**

Due process requires that the prosecution prove each element of the crime charged beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). Jury instructions that relieve the state of its obligation to prove every element of the offense beyond a reasonable doubt violate due process. *Carella v. California*, 491 U.S. 263, 265 (1989); *Francis v. Franklin*, 471 U.S. 307, 313 (1985); *Sandstrom v. Montana*, 442 U.S. 510, 520-24 (1979). Under well-established Pennsylvania law, in order to convict a defendant of first-degree murder, the jury must find that *the defendant*—not just his accomplice or co-conspirator—possessed the specific intent to kill; the element of specific intent cannot be "transferred" between accomplices. 18 Pa. C.S. § 2502; *Commonwealth v. Huffman*, 638 A.2d 961 (Pa. 1994); *Commonwealth v. Bachert*, 453 A.2d 931, 935 (Pa. 1982).

At trial, the defense did not contest Mr. Gibson's presence in the bar at the time of the shootings, but rather contended that he did not fire a weapon and did

---

[1] Petitioner presents here what is essentially a streamlined version of the argument set forth in *Mem.* 93-103. Petitioner does not waive any of the arguments set forth therein. Rather, Petitioner presents here a straightforward showing that he is entitled to summary relief.

3

not intend for either of the decedents to be shot. Under Pennsylvania law, Mr. Gibson could be guilty of first-degree murder if he shot the decedents, or if he was an accomplice or co-conspirator of the shooter, but only if *he himself intended for the decedents to be killed*. The jury instructions, however, allowed Mr. Gibson to be convicted of first-degree murder if he was an accomplice or co-conspirator of the shooter, as long as the shooter intended to kill. Those instructions violated due process.

It was uncontested that Mr. Gibson, Gregory Tancemore and David Green went together to Woody's Bar on the night of the offense. At least two of them carried guns. The Commonwealth's case was that Gibson got into a struggle with a bouncer at the rear of the bar, that Tancemore started shooting from the front of the bar, and that Gibson broke free, ran to the front of the bar, turned, and fired the fatal shots. *See Commonwealth v Gibson*, 688 A.2d 1152, 1157 (Pa. 1997) (summarizing trial testimony).

The evidence that Gibson fired the fatal shots consisted of eyewitness testimony and a statement taken from Gibson. The eyewitness testimony, however, was far from certain, especially because the witnesses did not claim to have seen Gibson fire a weapon until well after the night of the offense. *See* NT 10/3/91 at 109 (Princess Pettaway admits she did not claim she saw Gibson shoot in statement to police, but only when she talked to prosecutor "last Tuesday"); *id.* at 153-54

4

(Keith Simmons identified Tancemore to police and told them Tancemore was man who shot Frederick Dukes); NT 10/4/91 at 12 (Samuel Zeigler does not identify Gibson in court). As to the statement, Gibson testified that it was coerced, and produced witnesses who were at his arraignment (shortly after his interrogation) who said his appearance was consistent with his having been beaten. *See Commonwealth v. Gibson*, 951 A.2d 1110, 1115 (Pa. 2008).

Given the evidence, it was critical that the jury be instructed that it must find Mr. Gibson individually possessed the specific intent to kill in order to convict him of first-degree murder. The trial court did the opposite: it told the jurors they could convict Mr. Gibson of first-degree murder if he was an accomplice of a person who acted with such intent:

> You may find the defendant guilty of a crime without finding that he personally engaged in conduct required for the commission of that crime or even that he was personally present when the crime was committed. A defendant is guilty of a crime if he is an accomplice of another person who commits the crime. . . . He is an accomplice if with the intent of promoting or facilitating the commission of the crime, he solicits, commands, encourages, requests the other person to commit it, or he aids, agrees to aid or attempts to aid the other person in planning or committing it. . . .
>
> You may find the defendant guilty of a crime on the theory he was an accomplice, as long as you are satisfied beyond a reasonable doubt that the crime was committed and that the defendant was an accomplice of the person who committed it. It does not matter whether the person you believe committed the crime has not been prosecuted or convicted.

NT 10/8/91 at 172-73.

5

The trial court also instructed the jury that a principal and accomplice or two conspirators are "partners," indicating that such partners are equally guilty of any crimes committed as part of the partnership. NT 10/8/91 at 163-64. The court then charged the jury to consider whether Mr. Gibson was guilty of conspiracy to commit robbery:

> In order to find defendant guilty of conspiracy to commit robbery, you must be satisfied initially that the two elements of a conspiracy have been proven beyond a reasonable doubt:
>
> First, that the defendant agreed with another person or persons that they or one or more of them would engage in conduct which constitutes the crime of robbery or an attempt to commit the crime of robbery.
>
> And second, that the defendant did so with the intent of promoting or facilitating the commission of the crime of robbery.

*Id.* at 169-70. The jury convicted Mr. Gibson of conspiracy generally. NT 10/9/91 at 14.

The effect of the court's instructions was that if the jury found that Mr. Gibson had conspired to commit a robbery and a co-conspirator committed first degree murder, Mr. Gibson was equally guilty of first-degree murder. *See Laird v. Horn*, 414 F.3d 419, 426-28 (3d Cir. 2005) (nearly identical instructions violated due process by allowing jury to convict based on accomplice liability even if defendant did not intend to kill); *Smith v. Horn*, 120 F.3d 400, 412-14 (3d Cir. 1997) (same).

Consistent with and amplifying on these instructions, the prosecutor argued that when people are conspirators, any "crime of one is the crime of both or all," and that accomplice and conspirator liability are essentially the same. NT 10/8/91 at 128-29, 133-34. The prosecutor's argument thus told the jurors they could convict Mr. Gibson of first-degree murder if they believed he was the accomplice or co-conspirator of a person who committed first degree murder. *See Bennett v. Superintendent Graterford SCI*, 886 F.3d 268, 286-87 (3d Cir. 2018) (instruction that "'the act of one is the act of all'" contributed to due process violation); *Tyson v. Superintendent Houtzdale SCI*, 976 F.3d 382, 395-96 (3d Cir. 2020) (noting that the "prosecutor's closing argument contained the same erroneous interpretation of Pennsylvania law" as the instructions).

The instructions (aided by the prosecutor's argument) told the jurors that they could convict Mr. Gibson of a crime—first-degree murder—if he was an accomplice or co-conspirator of a person who committed that crime. The jury was instructed that the specific intent requisite for first-degree murder could be satisfied by a finding that the accomplice or conspirator had intent. These instructions relieved the jurors of their duty to determine whether Mr. Gibson had the specific intent to kill and instead allowed them to find him guilty of first-degree murder on the basis of the conduct and intent of an accomplice or conspirator.

While a state chooses how to define first-degree murder, due process requires that the prosecution prove each element of the crime as defined by the state beyond a reasonable doubt. *Winship*, 397 U.S. at 364. Therefore, instructions that lessen the Commonwealth's burden of proof violate due process. *See Osborne v. Ohio*, 495 U.S. 103, 122-25 (1990); *Franklin*, 471 U.S. at 323 n.7. Here, the trial court's instructions permitted the jury to find Mr. Gibson guilty of first-degree murder based on the specific intent of an accomplice or co-conspirator. This impermissibly relieved the Commonwealth of its burden of proving the specific intent element of first-degree murder beyond a reasonable doubt, in violation of Mr. Gibson's due process rights.

The Third Circuit has repeatedly found due process violations warranting reversal in circumstances nearly identical to Mr. Gibson's. *See, e.g., Tyson*, 976 F.3d at 394-95 ( due process violation where instruction effectively "eliminated the *mens rea* element of accomplice liability for first-degree murder"); *Bennett*, 886 F.3d at 286-88 (trial court's instruction violated defendant's due process rights where it suggested the jury could convict defendant as an accomplice or coconspirator based on the shooter's specific intent to kill); *Laird*, 414 F.3d at 427-28 (finding due process violation where trial court's instructions allowed jury to convict based on accomplice liability even if defendant did not intend to kill); *Smith*, 120 F.3d at 412-14 (finding due process violation where trial court's

8

instructions suggested that defendant could be convicted of first degree murder based on his accomplice's specific intent to kill). The court's instructions in Mr. Gibson's case were likewise constitutionally erroneous.

Most errors in habeas proceedings are subject to harmless error review under the standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *Brecht* provides that relief must be granted if an error "had substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 623. Under *Brecht*, the prosecution retains the "burden . . . to explain why [the] errors were harmless," with any doubt concerning harmlessness resolved in the petitioner's favor. *Id.* at 640-41 (Stevens, J., concurring); *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995). *Accord Laird*, 414 F.3d at 428.

Based on the instructions they were given, the jurors likely believed that they could convict Mr. Gibson of first-degree murder if he assisted or agreed to commit a robbery and an accomplice or co-conspirator killed the decedents, regardless of whether he personally intended that they be killed. Because the court instructed and the jury convicted Mr. Gibson only on conspiracy to commit robbery, nothing in the jury's verdict precludes the possibility that the jury convicted Mr. Gibson of first-degree murder only on a theory of accomplice or conspirator liability. *See Bennett*, 886 F.3d at 289 (error not harmless and no specific finding can be inferred where charge was conspiracy generally); *Laird*,

9

414 F.3d at 428-30 (error not harmless given conflicting evidence as to intent and instruction allowing conviction based on shared intent); *cf. Bronshtein v. Horn*, 404 F.3d 700, 714 (3d Cir. 2005) (error harmless where conviction of conspiracy to commit murder and specific instructions meant jury must have found specific intent). The error had a substantial and injurious effect on the verdict.

### B.  Ineffective Assistance of Counsel

Trial counsel did not request an appropriate instruction informing the jurors that they had to find that Mr. Gibson himself intended to kill in order to convict him of first degree murder, nor did counsel object to the instructions actually given. Direct appeal counsel did not raise the issue, either in post-sentence motions or on direct appeal. Both trial and post-sentence/appellate counsel provided ineffective assistance, in violation of Petitioner's rights under the Sixth Amendment.[2]

As shown in Mem. 99-101, professionally reasonable trial counsel would have objected to the instructions given by the trial court and requested an appropriate instruction. Professionally reasonable appellate counsel would also have raised the issue on direct appeal. The failures of both counsel to raise the

---

[2] Post-sentence/appellate counsel could have raised the unpreserved issue under the policy of relaxed waiver in capital cases that was then in effect. *See, e.g.*, *Lark v. Sec'y, Pa. Dep't of Corr.*, 645 F.3d 596, 613 (3d Cir. 2011) ("prior to 1998 capital petitioners in Pennsylvania could rely on state courts to relax procedural rules").

issue were deficient performance that prejudiced Mr. Gibson. *See Everett v. Beard*, 290 F.3d 500, 509-16 (3d Cir. 2002).

### C. The State Court Opinion

As discussed in Mem. 101-03, on PCRA appeal Mr. Gibson raised the same claim set forth as Ground V of Mem. Mr. Gibson argued that the jury instructions violated due process in two respects—because the instructions allowed the jury to convict Mr. Gibson of first-degree murder on the basis of the intent of an accomplice or co-conspirator without finding that Mr. Gibson intended to kill, and because the instructions enabled the jury to transfer intent to kill one decedent into intent to kill the other.[3] The claim raised on PCRA appeal further argued that both trial and appellate counsel were ineffective for failing to object to and litigate the due process violation. *Commonwealth v. Gibson*, No. 331 Cap. App. Dkt., Brief for Appellant, at 62-65 (Pa., filed Feb. 11, 2002) (attached hereto as Ex. 1).

The state court addressed the merits of the due process claim in considering whether there was arguable merit for the ineffective assistance claim. *See Gibson*, 951 A.2d at 1120-21 (outlining its approach to "waived" claims); *id.* at 1141-42 (discussing due process claim). In doing so, however, the court expressly

---

[3] The latter argument is discussed at Mem. 97. It is not addressed herein because Petitioner's entitlement to relief on the *Huffman* error is clear.

addressed only the sub-claim regarding transfer of intent from one decedent to the other. *Id.* at 1141-42.

The entire due process claim is properly before this Court, as it was exhausted on PCRA appeal. There is no procedural default of this claim, both because the state high court addressed the merits of the claim and because there was no adequate state procedural bar at the time of the trial and direct appeal, as the result of Pennsylvania's practice of relaxing waiver rules in capital cases. The Third Circuit's settled law is that the Pennsylvania Supreme Court's practice of relaxed waiver made clear that, at the relevant times, a "claim of constitutional error in a [Pennsylvania] capital case would not be waived by a failure to preserve it." *Szuchon v. Lehman*, 273 F.3d 299, 326 (3d Cir. 2001).

While the state high court addressed the merits of the due process claim, it only expressly addressed the transfer of intent argument. When a state court issues an opinion that, as here, expressly addresses "some but not all of a defendant's claims," there is a presumption that the state court addressed the merit of all the claims. *Johnson v. Williams*, 568 U.S. 289, 298 (2013). Applying that presumption, the state court ruling was an unreasonable application of *Osborne* and *Franklin*. In the absence of any actual discussion of the claim, the state court presumably simply ruled that the instructions were sufficient. That was unreasonable.

The due process rule is clear: instructions that lessen the state's burden of proof violate due process. And the law is clear that instructions virtually identical to those given here lessen the burden of proof and violate due process. *See Tyson*, 976 F.3d at 395 (because similar instruction "eradicated the prosecution's burden to prove the *mens rea* element of an intentional killing, it plainly violated" due process); *Bennett*, 886 F.3d at 288 (similar instruction violated due process); *Laird*, 414 F.3d at 426-28 (same); *Smith*, 120 F.3d at 412-14 (same). There simply is no reasonable interpretation of the instruction that is consistent with the dictates of due process; therefore, the state court decision finding found no error was an unreasonable application of *Osborne* and *Franklin*.

The state court's denial of the ineffective assistance claim was also unreasonable. Given that the instructions violated due process, there was no reasonable basis for trial and appellate counsel's failure to litigate the issue, and Mr. Gibson was prejudiced by counsel's deficient performance. *See Tyson*, 976 F.3d at 396-98 (counsel's failure to object was deficient performance and defendant was prejudiced; state court decision was unreasonable).

## CONCLUSION

For all of the reasons set forth herein and in Petitioner's prior submissions, this Court should grant summary judgment on Ground V as set forth in Mem. A proposed order granting the requested relief is attached hereto.

                              Respectfully submitted,

                              /s/ Matthew Lawry
                              MATTHEW LAWRY
                              MAURA MCNALLY
                              Assistant Federal Defenders
                              Federal Community Defender Office
                              for the Eastern District of Pennsylvania
                              601 Walnut Street, Suite 545 West
                              Philadelphia, PA 19106
                              215-928-0520
                              Matthew_Lawry@fd.org
                              Maura_McNally@fd.org

Dated: November 3, 2022